UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No.: 1:12-CV-23798-COOKE/TURNOFF

ASSOCIATION FOR DISABLED
AMERICANS, INC., *et al.*,

    Plaintiffs,

v.

REINFELD ANDERSON FAMILY LTD PRT,
d/b/a Skylake Professional Building, *et al.*,

    Defendants.

_____/

## OMNIBUS ORDER ON PLAINTIFFS' MOTION FOR RECONSIDERATION AND DEFENDANTS' MOTION TO STRIKE

    The plaintiffs brought this case against the defendants for alleged violations of laws prohibiting discrimination on the basis of disability. Plaintiff Daniel Ruiz ("Ruiz") is paralyzed from the waist down. Ruiz sought medical attention from Defendant Howard B. Reinfeld, M.D., ("Dr. Reinfeld"), and claims he encountered difficulties accessing the premises due to the defendants' failure to comply with various laws requiring accessibility for the disabled. After the case was filed, Dr. Reinfeld terminated the physician-patient relationship between himself and Ruiz on the grounds that a conflict of interest had arisen as a result of this lawsuit. I subsequently granted the defendants' motions to dismiss (ECF Nos. 24, 25, 31) on the basis that the plaintiffs lacked standing to bring this action for injunctive relief because Ruiz could not demonstrate a likelihood that he would return to the premises in the future, given that Dr. Reinfeld would no longer provide him with medical care. (ECF No. 75).

    Now before me is Plaintiffs', The Association for Disabled Americans, Inc.'s ("Association") and Ruiz's, Motion to Alter, Amend and Reconsider Order Granting Defendants' Motions to Dismiss Amended Complaint and Request for Additional Briefing and Oral Argument (the "Motion for Reconsideration") (ECF

1

No. 97). Defendants, Dr. Reinfeld, Reinfeld Anderson Family Ltd. Prt. ("Reinfeld Family"), and Howard B. Reinfeld and Associates, M.D., P.A., ("Reinfeld PA") responded to, and separately moved to strike, Plaintiffs' Motion for Reconsideration (ECF Nos. 86 and 108). I have reviewed the Motion for Reconsideration, Defendants' Response thereto, Defendants' Motion to Strike and the response and reply thereto, the record, and the relevant legal authorities. For the reasons stated herein, I am granting the Motion for Reconsideration, vacating the Order Granting Defendants' Motions to Dismiss Plaintiffs' Amended Complaint (ECF No. 75), denying Defendants' Motion to Strike, and reopening this case for further proceedings.

## I. FACTUAL BACKGROUND[1]

Ruiz is disabled under the ADA, paralyzed from the waist down and must ambulate with the use of a wheelchair. First Am. Compl. ¶ 5, ECF No. 20. The Reinfeld Family is the owner, operator, lessee, or lessor of real property and improvements compromising the subject premises, a professional building (the "Premises") housing a medical clinic at 18260 NE 19th Ave., North Miami Beach, Florida 33162-1632. *Id.* ¶ 6. Reinfeld PA is the owner, lessor, lessee or operator of Suite 201, the medical clinic and doctors' offices located within the Premises. *Id.* ¶ 7. Dr. Reinfeld is Plaintiff Ruiz's treating physician. *Id.* ¶ 8.

On June 15, 2012, Ruiz visited Defendants' premises after being discharged from the hospital and referred for follow-up care to Dr. Reinfeld. *Id.* ¶ 5, 8. Upon his arrival, Ruiz was not able to find adequate parking or safely exit his vehicle because the access aisle was blocked and improperly marked. *Id.* ¶ 5. Ruiz was unable to enter into the building unassisted as the "accessible" entrance had a "sloped entry." *Id.* Ruiz was also unable to use the restroom, had difficulty reaching the call buttons in the elevator, and was unable to transfer to an examination table due to the lack of a proper examination table. *Id.*

On October 18, 2012, Ruiz filed the current action. Ruiz sought permanent

---

[1] These facts are taken from the Plaintiffs' First Amended Complaint. *See Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998) ("In evaluating the sufficiency of a complaint, a court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff.").

2

injunctive relief pursuant to the Americans With Disabilities Act ("ADA"), Title 42 U.S.C. § 12181, *et seq*; the Florida Americans With Disabilities Accessibility Implementation Act, Title XXXIII, Part II, Chapters 553.501 through 553.513, Florida Statutes ("FADAIA"); and, the Rehabilitation Act, 29 U.S.C. § 794, *et seq.* (ECF No. 1). Shortly thereafter, on November 21, 2012, Dr. Reinfeld terminated his physician-patient relationship with Ruiz due to a "Conflict of Interest", and notified Ruiz via Certified Letter ("Letter"). First Am. Compl. ¶¶ 8, 24. Dr. Reinfeld advised Ruiz that he would no longer see him, and that he must immediately find another physician to care for his needs. *Id.* ¶¶ 8, 24. Dr. Reinfeld provided Ruiz with a list of multiple additional attending physicians that could treat him and a number of nearby hospitals where Dr. Reinfeld renders emergency care. *Id.* ¶¶ 5, 8. After receiving Dr. Reinfeld's termination letter, Plaintiffs amended their complaint to add a claim for retaliation, interference and coercion in violation of the ADA. *Id.* ¶¶ 47 – 72.

On September 30, 2013, I granted Defendants' motions to dismiss Plaintiffs' Amended Complaint (the "Order of Dismissal") (ECF No. 75) on the grounds that Plaintiffs could not establish standing because Dr. Reinfeld had terminated his physician-patient relationship with Ruiz due to a conflict of interest created by the filing of this action. Because the physician-patient relationship had been terminated, I believed this Court lacked subject matter jurisdiction to hear this case for injunctive relief because there was no likelihood that Ruiz would return to the premises and suffer future discrimination. I also dismissed the retaliation count because I found that the Amended Complaint failed to make a *prima facie* showing that Ruiz was terminated as Dr. Reinfeld's patient as a result of discrimination, as opposed to the conflict of interest cited by Dr. Reinfeld.

## II.   LEGAL STANDARD

### A.   Standard for Motion for Reconsideration

Federal Rule of Civil Procedure 59(e) permits the amendment or alteration of a judgment if a motion requesting same is filed within 28 days after the entry of the judgment at issue. Fed. R. Civ. P. 59(e). A Rule 59(e) motion "may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486

3

(2008). Rather, "[t]here are three grounds which justify the filing of a motion for reconsideration: '1) an intervening change in controlling law; 2) the availability of new evidence; and 3) the need to correct clear error or prevent manifest injustice.'" *City of Fort Lauderdale v. Scott*, No. 10-61122-CIV, 2011 WL 1085327 (S.D. Fla. March 21, 2011) (quoting *Williams v. Cruise Ships Catering & Service Int'l, N.V.*, 320 F. Supp. 2d 1347, 1357-58 (S.D. Fla. 2004)). The moving party "must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *U.S. v. Martinez*, No. 10-60332, 2011 WL 5101973, at *1 (S.D. Fla. 2011) (citations omitted); *see also Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1276 n.2 (11th Cir. 2005).

Federal Rule of Civil Procedure 60(b) also provides bases for relief from a judgment or order. Rule 60(b)(6) is the "catch all" ground for relief under Rule 60(b). *See Galbert v. West Caribbean Airways*, 715 F.3d 1290, 1294 (11th Cir. 2013). It allows for relief for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). "Rule 60(b)(6) motions must demonstrate that the circumstances are sufficiently extraordinary to warrant relief, that is, movants must show that absent such relief, an extreme and unexpected hardship will result." *Galbert*, 715 F.3d at 1294 (citation and quotation marks omitted). Rule 60(b) motions must be brought within a "reasonable time." Fed. R. Civ. P. 60(c). Whether to grant a Rule 60(b)(6) motion is within the district court's sound discretion. *Id.*

### III.   ANALYSIS

#### A.   Defendants' Motion to Strike

On October 28, 2013, Plaintiffs filed a timely motion for reconsideration of the Order of Dismissal. (ECF No. 80). The motion exceeded the twenty-page limit and font requirement imposed by our local rules. Plaintiffs had previously sought leave to exceed the twenty-page limit, but this Court had not ruled on the motion prior to the 28-day deadline imposed by Rule 59(e). Because the motion failed to comply with font requirements, I subsequently granted Plaintiffs leave to re-file the motion *nunc pro tunc* to October 28, 2013, the original filing date. (ECF No. 96). I denied Plaintiffs' request to exceed the page limits, however. (*Id.*) Plaintiffs were provided until December 9, 2013 to re-file.

4

Three minutes after midnight on December 10, 2013, Plaintiffs filed their revised Motion for Reconsideration. (ECF No. 97). The revised Motion for Reconsideration complied with the local rules on font requirements, but exceeded the twenty-page limit by ten lines. Plaintiffs' counsel subsequently moved the Court to excuse the failure to comply with my prior Order (ECF No. 96), citing a faulty hotel internet connection and the complexity of the issues as the reasons for noncompliance. (ECF No. 100). Defendants moved to strike the Motion for Reconsideration as untimely and exceeding the allowable page length (ECF No. 102, 108).

Defendants argue that this Court lacks the authority to extend the time for filing a motion for reconsideration pursuant to Rule 59(e), citing to Federal Rule of Civil Procedure 6(b)(2). Defendants, however, concede that the revised motion is, in substance, the same as the original, timely motion filed on October 28, 2013. (ECF No. 113 at 7) ("A review of the second Motion for Reconsideration [DE97] shows that the motion contains many stylistic rather than substantive changes…."). Moreover, Plaintiffs also moved for reconsideration pursuant to Rule 60(b)(6), which requires that motions be filed "within a reasonable time." Fed. R. Civ. P. 60(c). Even applying the December 10, 2013 filing date, the Motion for Reconsideration is timely under Rule 60(b). While the Motion for Reconsideration was filed four minutes after the deadline I imposed, Defendants will not be prejudiced by the short delay in service of the revised motion, and this matter should be resolved on the merits. I will, however, disregard the last ten lines of the Motion for Reconsideration for failing to comply with my prior Order denying Plaintiffs' motion to exceed the twenty-page limit.

B.  **Plaintiffs' Motion for Reconsideration**

1.  *Plaintiffs' attempt to introduce new evidence*

In their Motion for Reconsideration, Plaintiffs attempt to rely on evidence not previously considered by this Court in ruling on the motions to dismiss. (ECF No. 98). Defendants move to strike that evidence on the grounds that the motion to dismiss was a facial attack on subject matter jurisdiction, which was confined to the Complaint itself. I agree with Defendants and will not consider any evidence newly

5

raised by Plaintiffs. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) ("Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.") (citation omitted).

2.  *Plaintiffs' standing to assert claims for injunctive relief (Counts I, II, III)*

A plaintiff must demonstrate three things to establish standing under Article III: (1) injury-in-fact; (2) a causal connection between the asserted injury-in-fact and the challenged action of the defendant; and (3) that the injury will be redressed by a favorable decision. *See Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). In addition, "because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges…a real and immediate – as opposed to a merely conjectural or hypothetical – threat of *future* injury." *Id.* In ADA cases, "a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant." *Id.*

Defendants moved to dismiss the Amended Complaint on the basis that Plaintiffs could not demonstrate that Ruiz would suffer future discrimination because Dr. Reinfeld had terminated the physician-patient relationship based on the conflict of interest occasioned by the filing of this lawsuit. I hesitantly agreed with Defendants and dismissed the Amended Complaint with prejudice, though I recognized that, "Dr. Reinfeld terminating the physician-patient relationship with a person seeking injunctive relief under anti-discrimination statutes, essentially shields himself from any liability under those statutes and frustrates both the United States Congress and Florida legislature's intent." (ECF No. 75 at 10). Upon further consideration, I find this was error that would result in extreme and unexpected hardship.

First, standing is determined as of the filing of a complaint. *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1275 (11th Cir. 2003). As of the time of filing the original complaint in this case on October 18, 2012, Dr. Reinfeld had not yet terminated the physician-patient relationship. *See* ECF No. 20-1. Therefore, the issue of whether the termination letter ended Plaintiffs' standing had

6

not yet materialized.

Second, *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013), a case that was issued after the Order of Dismissal, warrants vacating the Order. There, the Eleventh Circuit considered whether an ADA "tester" plaintiff[2] had standing to seek injunctive relief. In determining whether an injury-in-fact existed, the *Houston* Court held that the plaintiff's motivations for returning to the premises were legally irrelevant. *Id.* at 1332 ("The substantive right conferred by the statute is to be free from disability discrimination in the enjoyment of the facility, regardless of Houston's motive for visiting the facility."). The Court specifically found that, with the exception of certain provisions not at issue here, there was no requirement under the ADA that the plaintiff be a client or customer of the defendant. *Id.* at 1333. Accordingly, the "tester's" averment that he intended to return to the premises – even if only to check to see if the premises were ADA-compliant – were sufficient where other facts (namely, the tester's proximity to the premises) indicated that the intention was more than merely conjectural. *Id.* at 1336-37.

In this case, Ruiz averred an intention to return to the premises in the future. Am. Compl. ¶ 5. In *Houston*, the Eleventh Circuit, citing to *Shotz*, stated that, "a plaintiff seeking an injunction under Title III either must have attempted to return to the non-compliant building or at least *intend to do so in the future*." *Id.* at 1336. With this liberal standard for finding a likelihood of future discrimination, combined with the newly-clarified fact that motivation is legally irrelevant in the ADA context, I must vacate the Order of Dismissal (ECF No. 75) which found that Ruiz did not plead a likelihood of future discrimination given that he would no longer receive medical treatment from Dr. Reinfeld. *Houston* clarified that a plaintiff's intention to return to the premises – regardless of his motivation for doing so – is a factor carrying great weight. Absent allegations suggesting that the intention to return is conjectural, such as the plaintiff living too far from the premises to make his future visit plausible, a plaintiff's intention to return to the premises in the future appears to suffice on a

---

[2] A "tester" plaintiff is a plaintiff that intentionally seeks to determine whether, in the case of disability discrimination, premises are compliant with statutes ensuring accessibility to disabled persons.

7

facial attack to subject matter jurisdiction.

Third, I find that even if Dr. Reinfeld and other physicians could moot a case such as this by terminating the physician-patient relationship, this situation is "capable of repetition, yet evading review." *See Arcia v. Florida Secretary of State*, 772 F.3d 1335, 1343 (11th Cir. 2014). As such, this Court retains jurisdiction to decide this case.[3]

"The 'capable of repetition, yet evading review' exception to the mootness doctrine applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* In this case, Dr. Reinfeld terminated the physician-patient relationship upon the filing of the complaint. By doing so, Dr. Reinfeld provided insufficient time to determine this matter before mooting the issue by preventing Ruiz from returning to the premises to obtain the medical care he sought. If all physicians faced with ADA-related lawsuits responded in this matter, disabled persons, such as Ruiz, would be unable to obtain the protections the ADA intends to afford them. While Ruiz may no longer obtain medical care from Dr. Reinfeld, members of the Association may seek to obtain care. Thus, there is a reasonable expectation that, at least with respect to the Association, the plaintiff would be subject to the same action again.

While I am now finding that Plaintiffs have not lost standing on account of Dr. Reinfeld's decision to terminate the physician-patient relationship, I am dismissing Count I, without prejudice, as to Defendant Dr. Reinfeld because the Amended Complaint does not allege that Dr. Reinfeld is an owner, operator, lessor, or lessee of the Premises. See Access for the Disabled, Inc. v. Island Inn Shores, Inc.,

---

[3] While the parties and the Order of Dismissal focused on "standing," this Court has an obligation to inquire into whether it has subject matter jurisdiction *sua sponte* whenever it may be lacking. *See University of So. Ala. v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). "A moot case is nonjusticiable and Article III courts lack jurisdiction to entertain it." *Troiano v. Supervisor of Elections in Palm Beach County, Fla.*, 382 F.3d 1276, 1281 (11th Cir. 2004). While standing and mootness are doctrines sometimes used interchangeably, "standing" refers to a party's concrete stake in the litigation *as of the time of bringing the action*, while "mootness" arises after the litigation has commenced. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-192 (2000).

No. 8:12-cv-821-T-33AEP, 2012 WL 2339724 (M.D. Fla. June 19, 2012) (dismissing complaint for ADA premises violations where defendant was not the owner, operator, lessor or lessee of the premises).

### 3. The retaliation claim (Count IV)

Finally, in the Order of Dismissal, I found that the retaliation claim (Count IV) should be dismissed because Ruiz could not demonstrate that the termination letter he received after filing this lawsuit was motivated by a retaliatory intent, rather than Dr. Reinfeld's exercise of his right as a physician to terminate the physician-patient relationship due to a conflict of interest. Upon further consideration, this was error.

In order to assert a claim under the ADA's prohibition against retaliation and coercion, a plaintiff must demonstrate that "(1) she engaged in statutorily protected expression; (2) she suffered an adverse . . . action, and (3) the adverse action was causally related to the protected expression." *Shotz*, 344 F.3d at 1180; *Weeks v. Harden Mfg. Corp.,* 291 F.3d 1307, 1311 (11th Cir. 2002). "[N]ot 'every unkind act' is sufficiently adverse." *Shotz*, 344 F.3d at 1181 (citing *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). We must analyze the sufficiency of the allegations of adverse action on a "case-by-case basis, using a both subjective and objective standard." *Shotz*, 344 F.3d at 1181 (citing *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)); *see also Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004). "To prove a causal connection, we require a plaintiff only to demonstrate 'that the protected activity and the adverse action were not *wholly unrelated*.'" *Shotz*, 344 F.3d at 1180 n.30. A plaintiff must show that the protected activity and adverse act were somewhat close in temporal proximity. *Higdon*, 393 F.3d at 1220.

Here, Defendants dispute the third element of the three-pronged test: whether the adverse action was causally related to the protected expression. Plaintiffs allege Ruiz received a Certified Letter from Dr. Reinfeld with the intent to "coerce, intimidate, threaten and interfere" with his right to care. There is no dispute in this case as to the first element of the prima facie case as Plaintiffs' filing of an ADA claim is protected pursuant to Section 504 of the ADA and the Constitution. As to the second element, the patient's claim for adverse action is sufficient as it claims

9

that the termination of the physician-patient relationship resulted in Ruiz suffering emotional distress and mental anguish as a direct result of the inability to return to his treating physician. With regard to the third element, Ruiz's decision to sue the medical establishment and the adverse action in the form of the termination of the patient-doctor relationship were not *wholly unrelated*. The Amended Complaint displays the temporal proximity between the ADA claims Plaintiffs filed on November 14, 2012, followed thereafter by Defendant notifying Ruiz of the termination of the physician-patient relationship on November 27, 2012,[4] by certified mail. While discovery may ultimately show a non-retaliatory intent – such as the conflict of interest created by the ongoing litigation – at the motion to dismiss stage, I cannot go beyond the four corners of the Amended Complaint.

Defendant Reinfeld Family argues that Count IV should be dismissed against it because there are no allegations linking the termination of the physician-patient relationship to it. I agree. Accordingly, I am dismissing Count IV as to Reinfeld Family, without prejudice.

**C.     Other Issues Raised in Defendants' Motions to Dismiss**

In the Order of Dismissal, it was unnecessary to consider other arguments made by Defendants in their motions to dismiss. I will now consider those arguments.

　　1.     *Counts I (ADA) and II (FADAIA)*

　　　　a.     ***Failure to allege whether Premises is held to new construction or readily achievable standard***

Defendants argue that Counts I and II should be dismissed because Plaintiffs fail to allege whether the ADA standard applicable to the Premises is new construction or readily achievable. I disagree.

On January 25, 1993 Congress enacted the ADA, forcing facilities built after this date to meet exacting design and implementation standards. *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1272-73 (11th Cir. 2006). "The Act imposes

---

[4] The court has held that a period of time as much as one month between the protected expression and the adverse action is not too protracted. *See Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998).

10

a less rigorous standard of compliance on 'existing facilities constructed before its enactment on January 26, 1993.'" *Access Now, Inc. v. S. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357, 1365 (S.D. Fla. 2001) (citing *Ass'n for Disabled Ams., Inc. v. Concorde Gaming Corp.*, 158 F. Supp. 2d 1353, 1362 n.5 (S.D. Fla. 2001)). 42 U.S.C. § 12182(b)(2)(A)(iv) provides that discrimination is "a failure to remove architectural barriers that are structural in nature, in existing facilities . . . where such removal is *readily achievable*. "'Readily achievable' means easily accomplishable and able to be carried out without much difficulty or expense." "Where removal is not 'readily achievable,' failure of the entity to make . . . facilities available through alternative methods if such methods are readily achievable, may constitute discrimination under the ADA." *Gathright-Dietrich*, 452 F.3d at 1273; *see* 42 U.S.C. § 12182(b)(2(A)(iv).

The Amended Complaint does not allege that the building was constructed in any particular year. However, in paragraph 17, Plaintiffs claim that Defendants are in violation of §12181, and separately lists all the ADA Accessibility Guidelines violations. This is sufficient at the pleading stage. A plain and simple allegation of an ADA violation is sufficient to give Defendants actual notice of the claims being presented. The exact legal standard can only be determined through discovery and expert assessments.

> b. *Barriers not actually encountered during the visit to the subject property*

Plaintiffs claim that Defendants discriminated against Ruiz and members of the Association by denying them access to the Premises by failing to remove architectural barriers as required by 42 U.S.C. §12182. Defendants argue that the Plaintiffs do not have standing because the Amended Complaint identified multiple barriers to entry onto the premises that (1) were not actually encountered, and (2) would not have affected Ruiz's disability.

"[A] plaintiff must have 'actual knowledge' of a barrier in order to have standing to challenge such a barrier." *Access Now, Inc.*, 161 F. Supp. 2d 1357, 1365 (S.D. Fla. 2001). A plaintiff need not confront each barrier or instance of discrimination in order to demonstrate his standing to sue so long as he has actual knowledge of the violation. *Fox v. Morris Jupiter Assc.*, No. 05-80689-CIV, 2007 WL

11

2819522, at *5 (S.D. Fla. Sept. 25, 2007). "A plaintiff may have 'actual notice' under this provision by either having 'encountered discrimination or [having] learned of the alleged violations through expert findings or personal observation.'" *Resnick v. Magical Cruise Co.*, 148 F. Supp. 2d 1298, 1302 (M.D. Fla. 2001). A plaintiff only has standing to complain about alleged barriers of which he was aware of at the filing of the complaint. *Access for the Disabled, Inc. v. First Resort, Inc.*, No. 8:11-cv-2342-T-30EAJ, 2012 WL 4479005 at *5 (M.D. Fla. Sept. 28, 2012).

The Amended Complaint refers to barriers for which Plaintiffs do not have actual knowledge. *See* ECF No. 20 at 8, n.2 ("all areas of [Defendants'] premises, including the interior areas thereof, were not able to be properly assessed . . . [A] *complete* list of the subject premises' ADA violations, . . . will require an onsite inspection by Plaintiffs' expert."). A post complaint onsite inspection, for standing purposes, violates the rule set in *First Resort* that limits standing to complaints alleged ***prior*** to the filing of the complaint. *First Resort, Inc.*, 2012 WL 4479005 at *5. (***emphasis added***).

Defendants also challenge Plaintiffs' allegations of barriers relating to disabilities not affecting Ruiz, such as the lack of Braille & tactile designations in elevators. Defendants are correct that Plaintiffs do not have standing to challenge barriers not actually affecting Ruiz. *See Access Now, Inc. v. So. Fla. Stadium Corp.*, 161 F.Supp.2d 1357 (S.D. Fla. 2001) ("To the extent Plaintiffs complain about violations that would discriminate against blind or deaf persons, or any disabilities other than that suffered by Plaintiff Resnick, they lack standing to pursue such claims.").

Defendants also challenge the Association's standing. An association may have standing to assert claims on behalf of its members, even where it has suffered no injury from the defendant's activity. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342 (1977). "The association must allege that its members . . . are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Id*. (citing *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). Under *Hunt*, "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing in their own right; (b) the interests it seeks to protect

are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Here, the prerequisites to the Association's "associational standing" are present. The Amended Complaint contains allegations that other members of the association have been denied access to the "benefits, services, programs, and activities" of the Premises because of the Defendants' ADA violations. The Plaintiff Association's members are individuals with disabilities under the ADA, and are allegedly jointly being discriminated against because of their disabilities. Lastly, the Plaintiff's complaint states that the claims asserted do not require the participation of any of the Association's individual members.

Accordingly, Counts I and II are dismissed without prejudice in order for Plaintiffs to plead only those alleged barriers Plaintiffs have actual knowledge of, and which actually pertain to Plaintiff Ruiz's disability.

### 2. Count III (Rehabilitation Act)

Reinfeld PA argues that Count III of the Amended Complaint should be dismissed because Plaintiffs failed to allege that it received federal funding.

Section 504 Rehabilitation Act of 2002, 29 U.S.C. § 794 provides that:

> No otherwise qualified individual with a disability in the United States, as defined by section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving *Federal financial assistance* or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). For section 504 purposes, a "program or activity" is defined as: "[a]ll of the operations of . . . an entire corporation, partnership, or other private organization . . . which is principally engaged in the business of providing . . . health care . . . any part of which is extended Federal financial assistance." *Sharrow v. Bailey*, 910 F. Supp 187, 193 (M.D. Pa. 1995) (citing 29 U.S.C. § 794(a)). "Receipt of federal funding in the form of Medicare or Medicaid payments for the care rendered to any patient brings the treating physician, hospital or medical center within the scope of the Act." *Sharrow*, 910 F. Supp at 193. It is not necessary that federal funds

13

are received for the treatment of the "complaining plaintiff" in order to satisfy the federal assistance requirement. *Id*.

For the purposes of the Rehabilitation Act, Plaintiffs do not have to establish that the federal assistance was on Ruiz's behalf. The Amended Complaint asserts that Reinfeld PA accepts both Medicaid and Medicare, two federally funded assistance programs. The plain language of the Rehabilitation Act section 794 requires the receipt of Federal financial assistance in order to bring Defendant Reinfeld PA within the scope of the Rehabilitation Act. Taking the facts in the First Amended Complaint as true, as I must at the pleading stage, Reinfeld PA's office accepts Medicaid and Medicare, two federally funded assistance programs. Therefore, Plaintiffs have sufficiently established that Reinfeld PA receives federal financial assistance under Section 504 of the Rehabilitation Act.  Am. Compl. ¶¶ 5, 37. However, Reinfeld PA correctly argues that the Amended Complaint mischaracterizes the defendant against whom the specific claim is being brought against in paragraph 40, citing Dr. Reinfeld instead of Reinfeld PA.

Thus, the motion to dismiss is granted without prejudice in order to correct the defendant against whom the claim is being filed.

## IV.   CONCLUSION

For the reasons provided in this Order, it is **ORDERED and ADJUDGED**:

1. Plaintiffs' Motion to Alter, Amend and Reconsider Order Granting Defendants' Motions to Dismiss Amended Complaint and Request for Additional Briefing and Oral Argument, ECF No. 97, is **GRANTED IN PART**.  The Order Granting Defendants' Motions to Dismiss Plaintiffs' Amended Complaint, ECF No. 75, is **VACATED**, and this Order is entered in its stead.  Plaintiffs' request for additional briefing and oral argument is **DENIED**.

2. Defendants' motion to strike, ECF Nos. 102 and 108 is **DENIED**.

3. Defendants' motions to dismiss, ECF Nos. 24, 25 and 31, are **GRANTED IN PART and DENIED IN PART**. Plaintiffs have leave to file a second amended complaint by May 18, 2015 to correct the pleading deficiencies as provided herein.

**DONE and ORDERED** in chambers at Miami, Florida, this 21st day of April

14

2015.

_____
MARCIA G. COOKE
United States District Judge


Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*